# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TRISHA ELAINE MILLARD,<br><br>Defendant. | No. CR15-2038<br><br>REPORT AND RECOMMENDATION |

On the 5th day of November 2015, this matter came on for hearing on the Motion to Suppress (docket number 33) filed by the Defendant on October 14, 2015. The Government was represented by Assistant United States Attorney Lisa C. Williams. Defendant Trisha Elaine Millard appeared in person and was represented by her attorney, Michael M. Lindeman.

## I. PROCEDURAL HISTORY

On September 15, 2015, Defendant Trisha Elaine Millard was charged by Indictment with possession of a firearm and ammunition by a prohibited person. Defendant appeared on September 16 and entered a plea of not guilty. Trial was scheduled before Chief Judge Linda R. Reade on November 16.

On October 14, Defendant timely filed the instant motion to suppress. The Government filed its resistance on October 21. Because the motion to suppress was pending, the Court granted co-Defendant Marchello Rembert's motion to continue trial, and trial for both defendants was rescheduled for December 21. Due to a scheduling conflict, co-Defendant Rembert again requested the Court to reschedule the trial. The Court granted Rembert's request, and trial was rescheduled for January 4, 2016.

## II. RELEVANT FACTS

Defendant is charged in Count 3 of the Indictment with possession of a firearm and ammunition by a prohibited person.[1] Specifically, it is alleged that on June 4, 2015, Defendant knowingly possessed a loaded Ruger .9 mm pistol while being an unlawful user of marijuana. The charge follows an investigation into a "disorderly conduct call" in Waterloo, Iowa.

At approximately 10:30 p.m. on June 4, 2015, Waterloo Police Officer Edward Savage responded to a report of "disorderly conduct." According to Savage, the area is a "well-known gang area" and he was very familiar with the neighborhood. In fact, officers had been called to the area earlier that evening on a report of "shots fired."

When Officer Savage arrived at the scene, he saw several cars parked on the right-hand side of the street, and observed a black Lincoln SUV parked on the left side, facing the wrong way. As Savage approached and turned on his overhead lights, he observed five or six persons exit the SUV. Savage observed a white female (later identified as Defendant Trisha Millard) leaving the driver's seat, and an African American male (later identified as co-Defendant Marchello Rembert) getting out on the front passenger side. According to Savage, three or four persons were also seen exiting the rear doors.

Officer Savage recognized Rembert and knew that a warrant was outstanding for his arrest. Accordingly, Savage immediately arrested Rembert. During this time, Defendant got back in the driver's seat of the SUV. At Rembert's request, Savage took Rembert over to the SUV, where Rembert spoke briefly with Defendant.

After placing Rembert in a patrol car, Officer Savage returned to the SUV, where he observed Defendant engage in "furtive movements." Savage testified that he saw Defendant lean forward and "duck down" toward her legs. When Savage asked Defendant

---

[1] Co-Defendant Marchello Rembert is charged with possession of a firearm by a felon (Count 1) and possession with intent to distribute crack cocaine (Count 2).

2

about her movements, she admitted that she had a bottle of alcohol. Savage testified he could see the bottle of alcohol while Defendant was in the vehicle. Savage then instructed Defendant to get out of the car. Savage asked Defendant whether there was "anything else in the vehicle I should be worried about" and Defendant told Savage that she had a gun permit. When Savage asked Defendant where the gun was located, however, Defendant responded that she did not recall. Believing the gun was in the car, Savage told Defendant she was being detained, and Defendant was placed in handcuffs. According to Officer Savage, he then "leaned into" the vehicle and observed the barrel of a gun sticking out from under the front driver's seat.[2] Savage also opened the center console of the vehicle and found a bag of marijuana.[3]

Defendant was then transported by reserve officers to the police department, apparently arriving at approximately 10:53 p.m. After waiting for approximately 30 minutes,[4] Defendant was joined by Black Hawk County Sheriff's Deputy David Hinz for a drug recognition evaluation. The evaluation, which extended for nearly an hour, was video recorded.[5] At the beginning of the evaluation, Hinz read a *Miranda* warning to Defendant and asked if she understood her rights. Defendant answered affirmatively and cooperated in the evaluation. The evaluation form completed by Hinz states a *Miranda*

---

[2] The bottle of alcohol can be seen in Government's Exhibits 2 and 3, and the barrel of the gun is shown in Exhibit 3.

[3] The marijuana is shown in Government's Exhibit 4.

[4] Defendant's handcuffs were removed after she had been sitting for approximately 15 minutes.

[5] A DVD of the evaluation by Deputy Hinz was introduced as Government's Exhibit 7.

3

warning was given at 11:27 p.m.[6] Near the end of the evaluation, Defendant told Hinz that she had last smoked marijuana approximately three weeks earlier.

Following completion of the drug evaluation by Deputy Hinz, Defendant was taken to an interview room, where she was questioned first by Officer Caleb Christiansen and then by Officer Savage. At the beginning of the questioning, Defendant was advised that she was being charged with possession of marijuana and a weapons charge. Christiansen asked Defendant: "You were read your rights, correct?" Defendant responded: "I was." During the 15-minute interview by Christiansen and Savage, Defendant told the officers that she purchased the gun at Pawn America, and it belonged to her. Prior to leaving the interview room, Defendant was provided with a citation charging her with an "open container," in violation of Iowa Code § 321.284. Defendant was then taken to jail.

## III. DISCUSSION

Defendant raises two issues in her motion to suppress. First, Defendant argues the warrantless search of her vehicle lacked probable cause. Second, Defendant asserts she "was questioned while in a custodial interrogation without [being] properly mirandized." The Government argues the search of the vehicle was authorized under the "automobile exception" to the warrant requirement. The Government further asserts Defendant was *Mirandized*, waived her *Miranda* rights, and voluntarily answered questions by the investigating officers.

### A. Vehicle Search

The law applicable to vehicle searches is well-established. The Fourth Amendment protects persons against unreasonable searches and seizures. Searches conducted without a warrant are presumptively unreasonable, subject to a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1139 (8th Cir. 2005). One such exception is

---

[6] A copy of the drug evaluation form was introduced as Government's Exhibit 6.

the so-called "automobile exception."[7] "[T]he automobile exception 'justifies searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.' No exigency beyond that created by the ready mobility of an automobile is required for a warrantless search of a car to fall within the exception." *United States v. Blaylock*, 535 F.3d 922, 926 (8th Cir. 2008) (quoting *California v. Carney*, 471 U.S. 386, 392 (1985)). *See also United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (noting that the automobile exception "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity").

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) (quoting *United States v. Mayo*, 627 F.3d 709, 713-14 (8th Cir. 2010)). "In determining whether an officer had probable cause to search, courts apply a common sense approach and consider all relevant circumstances." *Kennedy*, 427 F.3d at 1141. "If probable cause justifies the search of [a] lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Olivera-Mendez*, 484 F.3d 505, 512 (8th Cir. 2007).

Accordingly, the question for the Court is straightforward: When Officer Savage searched Defendant's vehicle, could a reasonable person, given the totality of the

---

[7] In her brief, Defendant preemptively addresses the argument of whether the search of the vehicle was justified as a search incident to an arrest, citing *Arizona v. Gant*, 556 U.S. 332 (2009). The Government does not, however, rely on the "search incident to arrest" exception. (In fact, it would appear that Defendant was not arrested until well after the vehicle search was conducted.) If the search of Defendant's vehicle was supported by probable cause, then it can be justified under the automobile exception, and it is unnecessary to consider the holding in *Gant*. *See United States v. Farnell*, 701 F.3d 256, 264 fn.6 (8th Cir. 2012).

circumstances, believe there was a fair probability that contraband or evidence of a crime would be found in the vehicle? While Defendant's brief refers generally to "probable cause" and sets forth hornbook law in that regard, she makes no effort to apply the facts in this case to the issue of whether there was probable cause to search the vehicle.

To determine whether probable cause existed, the Court must look at the totality of the circumstances. Officers initially responded to a call of disorderly conduct. According to Officer Savage, "it was a loud car, loud people call, disorderly conduct." The call came from the area of the 200-block of Cottage Street during the late evening hours. Savage testified he "knew the block very well." According to Savage, he had been there "quite a few times with various different gang members and incidences." Earlier that evening, officers responded to the area on a report of "shots fired." When Savage arrived on the scene, there were several vehicles and multiple people in the area.

After Officer Savage turned on his overhead lights, he observed approximately five people exit the vehicle which was later subject to the search. Co-Defendant Marchello Rembert exited the front passenger side of the vehicle, and Savage immediately recognized him as someone with an outstanding arrest warrant. Rembert was arrested and crack cocaine and money were removed from his pockets. At his request, Rembert was permitted to speak briefly with Defendant before being placed in a patrol car.

After Rembert was placed in a patrol car, Officer Savage approached the subject vehicle and observed Defendant engaging in "furtive movements." When asked about her actions, Defendant admitted that she had a bottle of alcohol in the vehicle, and Savage was apparently able to observe the bottle. Defendant was then instructed to exit the vehicle and was asked if there was anything else which the officer should be concerned about. Defendant told Savage that she had a gun permit, but claimed she could not recall where the gun was located. At that point, Savage leaned in through the open door and observed the barrel of the gun sticking out from under the front driver's seat.

In Iowa, subject to certain exceptions, "a person . . . who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor." *See* Iowa Code § 724.4(1). Here, a reasonable person could conclude from the totality of the circumstances that there was a fair probability that Defendant's gun would be found in her vehicle. The search occurred at 10:30 p.m. in a neighborhood which was known for gang activity, where a "shots fired" call had been placed earlier in the evening, and after Officer Savage observed Rembert exiting the vehicle carrying crack cocaine. Defendant told Savage that she owned a gun (with a gun permit), but could not recall where the gun was located. Common sense suggests that there was at least a "fair probability" that the gun was in the car. Because probable cause existed to believe the gun was in the vehicle, a search was authorized under the automobile exception to the warrant requirement.[8]

## B. Miranda Warning

In her motion, Defendant asks the Court to suppress "any statements made by the defendant at the police station." After citing hornbook law in her brief, Defendant's argument consists of a single sentence: "Here, the Defendant was questioned while in a custodial interrogation without [being] properly mirandized, and such statements should be suppressed." The Court is left to speculate regarding the precise nature of Defendant's argument.

To the extent Defendant suggests she was not given a *Miranda* warning, her argument is belied by the evidence. It is clear from the video recordings that Defendant

---

[8] At the hearing, the Government offered testimony by Officer Savage regarding inventory searches. A copy of the Waterloo Police Department Operational Guideline for inventory searches was introduced as Government's Exhibit 5. The Government does not argue in its brief, however, that the warrantless search was authorized as an inventory search (another exception to the warrant requirement). The Operational Guideline states that the purpose of the policy "is to establish guidelines for impounding vehicles after the custodial arrest of the driver." Here, Defendant was not arrested until well after the vehicle had been searched.

7

was given a *Miranda* warning and waived her rights in that regard. As shown on the video introduced as Government's Exhibit 7, Deputy Hinz read a *Miranda* warning to Defendant and asked if she understood her rights. Defendant answered affirmatively and cooperated in the drug recognition evaluation. Defendant was then taken to an interview room, where she was questioned by Officers Christiansen and Savage. At the beginning of the questioning, as shown on Exhibit 8, Christiansen asked Defendant if she was read her rights, and Defendant responded "I was." She then responded to all of the questions asked.

Defendant does *not* assert that her waiver of *Miranda* rights was involuntary, or that her statements were otherwise involuntary. And if such argument had been made, it would be unavailing. Defendant is 27 or 28 years old and appears to be of at least average intelligence. There were no obvious signs of Defendant being under the influence of drugs or alcohol during the questioning, and her answers were responsive to the questions. The questioning took place over a relatively short period of time, and Defendant was given food, something to drink, and a bathroom break. There is no evidence that she was threatened or physically intimidated by the officers. *See United States v. Chaidez*, 906 F.3d 377, 381 (8th Cir. 1990) (identifying factors to be considered in determining if a waiver is voluntary). In short, Defendant's unsupported assertion that she was questioned "without [being] properly mirandized" is without merit.

## IV. RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that the Motion to Suppress (docket number 33) filed by Defendant be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. ***The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of***

*all portions of the record the district court judge will need to rule on the objections."* Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on October 14, 2015.

DATED this 10th day of November, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA